[No. C004886. Third Dist. Nov. 15, 1988.]

GERALDINE SCHMID, Petitioner, v.
THE SUPERIOR COURT OF CALAVERAS COUNTY,
Respondent;
BERT SARGENT et al., Real Parties in Interest.

**COUNSEL**

Duncan, Ball, Evans, Ubaldi & Rust and Paul R. Bartleson for Petitioner.

No appearance for Respondent and Real Parties in Interest.

**OPINION**

**SIMS, J.**—In this case we hold that a settlement of a personal injury lawsuit is in "good faith," for purposes of sections 877 and 877.6 of the

Code of Civil Procedure,[1] where a defendant pays the plaintiff the limit of the defendant's insurance policy and has no other assets, even though the amount paid in settlement is far less than the likely amount of a judgment against the defendant were the case to go to trial. (All further undesignated code references are to the Code of Civil Procedure.)

### PROCEDURAL HISTORY

Petitioner Geraldine Schmid seeks a writ of mandate directing respondent superior court to vacate its order denying a motion for determination of good faith settlement pursuant to sections 877 and 877.6 and to enter a new order granting the motion.

The facts recited below are taken from the moving papers of the settling parties.

Petitioner Schmid is the settling defendant in the underlying action, which arose out of an automobile accident on the night of December 11, 1987. Schmid was the driver; plaintiff Bert Sargent was a passenger in her car. About 11 p.m., Schmid missed a sharp left turn, drove off the road and collided with a tree near Placerville in El Dorado County, severely injuring Sargent. The road was an unmarked, unlit, winding road in the hills, lack-

---

[1] Section 877 provides in pertinent part: "Where a release, dismissal with or without prejudice, or a covenant not to sue or not to enforce judgment is given in good faith before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort, or to one or more other co-obligors mutually subject to contribution rights, it shall have the following effect:

"(a) It shall not discharge any other such party from liability unless its terms so provide, but it shall reduce the claims against the others in the amount stipulated by the release, the dismissal or the covenant, or in the amount of the consideration paid for it whichever is the greater.

"(b) It shall discharge the party to whom it is given from all liability for any contribution to any other parties."

Section 877.6 provides in pertinent part:

"(a) Any party to an action wherein it is alleged that two or more parties are joint tortfeasors . . . shall be entitled to a hearing on the issue of the good faith of a settlement entered into by the plaintiff . . . and one or more alleged tortfeasors . . . .

"(b) The issue of the good faith of a settlement may be determined by the court on the basis of affidavits served with the notice of hearing, and any counteraffidavits filed in response thereto, or the court may, in its discretion, receive other evidence at the hearing.

"(c) A determination by the court that the settlement was made in good faith shall bar any other joint tortfeasor or co-obligor from any further claims against the settling tortfeasor or co-obligor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault.

"(d) The party asserting the lack of good faith shall have the burden of proof on that issue.

"(e) When a determination of the good faith or lack of good faith of a settlement is made, any party aggrieved by the determination may petition the proper court to review the determination by writ of mandate."

ing a shoulder area. Other accidents had occurred on this road recently but the county had taken no steps to reduce the danger. After the accident, Schmid's blood-alcohol level measured approximately .17. Sargent was hospitalized for 20 days.

In his complaint (in which his wife Charlotte Sargent is also a plaintiff) Sargent named Schmid and El Dorado County (County) as defendants. He alleged permanent physical, mental, and emotional damages in excess of $500,000, including medical bills already incurred in the range of $20,000 and expected to reach $60,000. He alleged further that the accident had deprived him of his ability to work or support himself.

Schmid offered a settlement of $55,000, representing the policy limit of her insurance coverage. Undisputed evidence submitted on the motion showed she had no other assets.

In their "Joinder in Motion for Determination of Good Faith Settlement," plaintiffs estimated that Schmid's share of liability for the accident was 10-20 percent, and the share of liability of nonsettling defendant County was 80-90 percent.

The moving parties' papers in the trial court analyzed the settlement in light of the factors specified in *Tech-Bilt, Inc.* v. *Woodward-Clyde & Associates* (1985) 38 Cal.3d 488 [213 Cal.Rptr. 256, 698 P.2d 159]. (See also *Far West Financial Corp.* v. *D & S Co.* (1988) 46 Cal.3d 796 [251 Cal.Rptr. 202, 760 P.2d 399]; *Abbott Ford, Inc.* v. *Superior Court* (1987) 43 Cal.3d 858 [239 Cal.Rptr. 626, 741 P.2d 124].) These factors include "a rough approximation of plaintiffs' total recovery and the settlor's proportionate liability, the amount paid in settlement, the allocation of settlement proceeds among plaintiffs, . . . a recognition that a settlor should pay less in settlement than he would if he were found liable after a trial. . . . the financial conditions and insurance policy limits of settling defendants, . . . the existence of collusion, fraud, or tortious conduct aimed to injure the interests of nonsettling defendants. . . . [and the need to evaluate the settlement] on the basis of information available at the time of settlement." (*Tech-Bilt, supra*, 38 Cal.3d at p. 499.) The moving parties stressed defendant Schmid had no assets to pay a judgment in excess of her insurance policy limit.

Nonsettling defendant County did not oppose the motion seeking good faith approval of the proposed settlement. Nonetheless, following a hearing the trial court denied the motion. Although the court acknowledged that defendant Schmid had no assets other than her insurance policy, good faith

approval was denied because the court did not feel that the percentage of negligence attributable to the County was realistic and that the amount of the settlement bore a realistic proportion to damages that could be awarded.

After receiving Schmid's petition, we notified all parties that we were considering issuing a peremptory writ in the first instance and we requested opposition pursuant to *Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171 at page 180 [203 Cal.Rptr. 626, 681 P.2d 893]. No opposition has been filed. We shall issue the writ.

## DISCUSSION

The trial court plainly refused good faith approval of the settlement because it understandably rejected plaintiffs' facially preposterous allocation of proportionate fault (10-20 percent to Schmid; 80-90 percent to County). The trial court apparently believed the disparity between Schmid's fault and the amount of her contribution precluded good faith approval. ■ The trial court may have relied on the rule stated in *Tech-Bilt* that, " '[A] defendant's settlement figure must not be grossly disproportionate to what a reasonable person, at the time of the settlement, would estimate the settling defendant's liability to be.' " (*Tech-Bilt, supra,* 38 Cal.3d at p. 499, quoting *Torres* v. *Union Pacific R.R. Co.* (1984) 157 Cal.App.3d 499, 509 [203 Cal.Rptr. 825].)

However, the court in *Tech-Bilt* acknowledged that the quoted rule is subject to an exception. Thus, the court noted that bad faith is not established merely by a showing that a settling defendant with limited ability to satisfy a judgment will pay less than his or her theoretical proportionate share: "Such a rule would unduly discourage settlements. 'For the damages are often speculative, and the probability of legal liability therefor is often uncertain or remote. *And even where the claimant's damages are obviously great, and the liability therefor certain, a disproportionately low settlement figure is often reasonable in the case of a relatively insolvent, and uninsured, or underinsured, joint tortfeasor.*' [Citation.]" (38 Cal.3d at p. 499, italics added.)

■ The latter rule controls here. We can think of no earthly good that would come from requiring defendant Schmid to remain in the action. Good faith approval of the settlement would bar contribution or indemnity claims against Schmid by codefendant County. (§ 877.6, subd. (c); *Far West Financial Corp.* v. *D & S Co., supra,* 46 Cal.3d at p. 817.) However, the County, which has eschewed every opportunity to contest the settlement, has clearly concluded the pursuit of contribution or indemnity claims against Schmid would be of no practical value. No evidence suggests that Schmid has any assets, or any prospect of acquiring assets, other than her

insurance policy. Yet disapproval of the good faith of the settlement would doubtless require Schmid to continue her defense, possibly at the expense of her insurer,[2] to avoid a judgment in excess of her policy limits that could require her to declare bankruptcy.

We see no virtue in this.

Schmid's continued defense would simply increase her defense costs (possibly producing an unnecessary ultimate boost in insurance premiums) and needlessly add to the work of all personnel of the court.

■ "Ordinarily a determination as to whether a settlement is in good faith must be left to the discretion of the trial court." (*Tech-Bilt, supra,* 38 Cal.3d at p. 502.) However, if an abuse of discretion is shown, relief by writ is available. (*Ibid.*) ■ Since the record shows no unfairness in the proposed settlement here, the settlement should be approved as having been entered in good faith.

Having complied with the procedural prerequisites of *Palma* v. *U.S. Industrial Fasteners, Inc., supra,* 36 Cal.3d 171, we are authorized to dispense with an alternative writ and issue a peremptory writ in the first instance. (*Id.,* at p. 180.)

Let a peremptory writ of mandate issue directing respondent superior court to vacate its order denying the motion for determination of good faith settlement and enter a new order granting the motion.

Puglia, P. J., and Sparks, J., concurred.

---

[2] See *Signal Companies, Inc.* v. *Harbor Ins. Co.* (1980) 27 Cal.3d 359 [165 Cal.Rptr. 799, 612 P.2d 889, 19 A.L.R.4th 75]; compare *Aetna Cas. & Surety Co.* v. *Certain Underwriters* (1976) 56 Cal.App.3d 791 [129 Cal.Rptr. 47]; see generally Annot., Liability Insurer's Duty to Defend Action Against an Insured After Insurer's Full Performance of Its Payment Obligations Under Policy (1969) 27 A.L.R.3d 1057; Comment, *Termination of the Duty of an Insurance Carrier to Defend: Did the California Supreme Court Send the Wrong Signal*? (1985) 17 Pacific L.J. 283.