[No. D049448. Fourth Dist., Div. One. Apr. 2, 2007.]

TSI SEISMIC TENANT SPACE, INC., Petitioner, v.
SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
GEOCON INCORPORATED et al., Real Parties in Interest.

[No. D049460. Fourth Dist., Div. One. Apr. 2, 2007.]

SWANSON & ASSOCIATES, Petitioner, v.
SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
GEOCON INCORPORATED et al., Real Parties in Interest.

## COUNSEL

Howard, Strickroth & Parker, Bryan C. Zaverl and Theodore R. Howard for Petitioner TSI Seismic Tenant Space, Inc.

Cleavinger Associates and Marc D. Cleavinger for Petitioner Swanson & Associates.

No appearance for Respondent.

Shirlyn Daddario; Brown Law Group, Lann G. McIntyre; Balestreri, Pendleton & Potocki and Karen A. Holmes for Real Party in Interest Geocon Incorporated.

Naumann, Levine & Silldorf and William H. Naumann for Real Party in Interest Serena Sunbow.

## OPINION

**NARES, Acting P. J.**—In this construction defect action the court granted real party in interest Geocon Incorporated's (Geocon) motion seeking a determination that its settlement with developer Serena Sunbow (Sunbow) for $50,000 was in good faith within the meaning of Code of Civil Procedure[1] section 877.6. Although the damages plaintiff Sunbow allegedly suffered as a

---

[1] All further statutory references are to the Code of Civil Procedure.

result of Geocon's negligence in performing geotechnical engineering services on the project exceeded $3.4 million, Geocon asserted its settlement was in good faith because its contract with Sunbow contained a limitation of liability clause that limited Geocon's liability to Sunbow to $50,000. Petitioners TSI Seismic Tenant Space, Inc. (TSI), which contracted with Sunbow to act as the general contractor on the project, and Swanson & Associates (Swanson), the structural engineer on the project, opposed the motion. They argued the settlement was grossly disproportionate to Geocon's proportionate share of liability, and the effect of a determination the settlement was in good faith would be to cut off their right to seek recovery for implied indemnity or contribution from Geocon, even though according to experts, Geocon was responsible for over $3 million in damages.

■    On these petitions for writ of mandate, TSI and Swanson seek to overturn the court's determination that the settlement was entered into in good faith, asserting (1) the settlement for $50,000 is far outside Geocon's potential share of liability in this matter; and (2) it was improper for the court to rely on the limitation of liability clause in finding the settlement was entered into in good faith.[2] We conclude that the court erred in finding the settlement between Sunbow and Geocon was entered into in good faith based solely upon the limitation of liability clause, without considering Geocon's proportionate share of liability to the other defendants on their claims for implied indemnity or contribution against Geocon. Accordingly, we grant the petitions and order the court to vacate its order determining the settlement between Sunbow and Geocon to be in good faith.

### FACTUAL AND PROCEDURAL BACKGROUND

Geocon contracted with Sunbow to provide geotechnical services on a parcel of real property that was being prepared for construction of an apartment complex called Villa Serena. Geocon's contract with Sunbow included a limitation of liability clause that provided: ". . . [Sunbow] agrees to limit [Geocon's] liability to [Sunbow] and to all other parties for claims arising out of [Geocon's] performance of the services described in the Agreement. The aggregate liability of [Geocon] will not exceed $50,000 for negligent professional acts, errors, omissions, including attorney's fees and costs which may be awarded to the prevailing party, and [Sunbow] agrees to indemnify and hold harmless [Geocon] from and against all liability in excess of the monetary limit established above."

---

[2] TSI and Swanson filed separate petitions for writ of mandate. On October 30, 2006, we ordered the petitions to be considered together. For purposes of disposition and effective April 2, 2007, those petitions are now consolidated.

Pursuant to the contract with Sunbow, Geocon prepared an initial soils report in February 1999, before any grading was done, which identified the soils as having "very low" to "medium" expansion potential. However, in two subsequent reports prepared by Geocon, one after rough grading and one after finish grading, it concluded that the soils had a " 'high' expansion potential." Based upon this finding and its tests of the soils on site, Geocon modified its recommendations for foundations and slabs contained in its original February 1999 report.

TSI entered into a contract with Sunbow to act as general contractor overseeing the construction of Villa Serena. Swanson was the structural engineer on the project. Construction began in 1999 and was completed in 2000.

Following completion of construction of Villa Serena, cracking in the site stairs and flatwork appeared, as well as cracking in the interior and exterior of some of the buildings, which was attributed to the movement of expansive soil. Sunbow filed a construction defect action against Geocon, TSI, Swanson and several others involved in the construction of Villa Serena. TSI subsequently filed a cross-complaint against Geocon.

Sunbow and Geocon thereafter entered into a stipulation to submit the issue of the enforceability of Geocon's limitation of liability clause to a judicial referee, the Honorable Kevin Midlam, retired. The parties agreed that if the contract was applicable to the work Geocon performed, the limitation of liability clause was enforceable, unless it was shown that Geocon was grossly negligent in the performance of its work.

The question of whether Geocon acted in a grossly negligent manner was decided based upon the testimony of Sunbow and Geocon's experts, as well as documentary evidence submitted to Judge Midlam. Sunbow's expert opined that a number of breaches of the applicable standard of care occurred, which, taken as a whole, constituted gross negligence.

Judge Midlam rejected most of Sunbow's criticisms, found the evidence regarding one "inconclusive," and determined that, assuming arguendo that Sunbow could meet its burden of proof that Geocon had violated the standard of care in two areas, at most Sunbow could show ordinary, not gross negligence, on the part of Geocon. Judge Midlam also found that the contract was applicable to the work Geocon performed. Based upon these

findings, Judge Midlam determined that the limitation of liability clause was enforceable.

Thereafter, Sunbow agreed to settle with Geocon for $50,000, and Geocon, as a part of that settlement, waived attorney fees and costs it had incurred in excess of $259,000. The settlement was conditioned upon the court finding that it was made in good faith under section 877.6.

Geocon brought a motion under section 877.6 to determine that the settlement was made in good faith. Geocon argued the settlement was in good faith because (1) its liability was limited, under the enforceable limitation of liability clause, to $50,000; (2) its expert testified at the hearing before Judge Midlam that Geocon had not breached the applicable standard of care; and (3) it was waiving the right to recover $259,000 in attorney fees.

TSI and Swanson opposed the motion, arguing that (1) the $50,000 to be paid was not close to Geocon's proportionate share of liability for Sunbow's claimed damages, where approximately $3.4 million of those damages was attributed to Geocon's negligence; (2) Geocon's liability to the other defendants for implied indemnity was not affected by the limitation of liability clause; (3) the settlement did not meet the applicable standards for a good faith settlement; (4) the settlement was designed to injure the interests of the nonsettling defendants; and (5) the settlement was not in good faith because Geocon was responsible for the vast majority of damages incurred by Sunbow, as demonstrated by the opinion of Sunbow's geotechnical engineer. In support of their opposition, TSI and Swanson submitted the expert testimony of Sunbow's geotechnical expert, as well as TSI's soils engineer, that showed that (1) Sunbow's total claimed damages were approximately $6.4 million; and (2) Geocon was primarily responsible for approximately $3.4 million of those damages.

In its reply points and authorities, Geocon argued, in addition to the arguments made in its opening brief, that the motion should be granted because (1) even if cross-complaints for indemnity and contribution were barred by the order, the nonsettling defendants could still argue at trial that Geocon was liable and obtain an offset against Sunbow because of its contractual obligation to indemnify Geocon; (2) TSI and Swanson were not bound by any allocation of fault created by the settlement; and (3) TSI and Swanson could use Sunbow's expert to argue Geocon was at fault for the damages claimed by Sunbow.

The court granted Geocon's motion, finding that despite TSI and Swanson's submission of evidence of Geocon's negligence, Sunbow's total cost of repair, and Sunbow's previous demand on Geocon, in light of the fact that Geocon's liability to Sunbow was capped at $50,000, the settlement was within the "reasonable range of Geocon's proportionate share of liability for [Sunbow's] injuries."

These petitions for writ of mandate followed.

## DISCUSSION

### A. *Standard of Review*

The trial court is given broad discretion in deciding whether a settlement is in "good faith" for purposes of section 877.6, and its decision may be reversed only upon a showing of abuse of discretion. (*Tech-Bilt, Inc. v. Woodward-Clyde & Associates* (1985) 38 Cal.3d 488, 502 [213 Cal.Rptr. 256, 698 P.2d 159] (*Tech-Bilt*).) However, where the exercise of discretion on the basis of established criteria may yield but one conclusion, an abuse of discretion may be found and the appellate court may determine that a particular settlement lacks good faith within the meaning of the statute. (*Ibid.*)

### B. *Analysis*

■ "Any party to an action in which it is alleged that two or more parties are joint tortfeasors or co-obligors on a contract debt shall be entitled to a hearing on the issue of the good faith of a settlement entered into by the plaintiff . . . and one or more alleged tortfeasors or co-obligors . . . . " (§ 877.6, subd. (a)(1).) "A determination by the court that the settlement was made in good faith shall bar any other joint tortfeasor or co-obligor from any further claims against the settling tortfeasor or co-obligor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault." (§ 877.6, subd. (c).) A good faith finding also reduces the claims against the nonsettling defendants in the amount stipulated by the settlement. (§ 877, subd. (a).)

■ In the seminal case *Tech-Bilt, supra,* 38 Cal.3d 488, the California Supreme Court identified the following nonexclusive factors courts are to consider in determining if a settlement is in good faith under section 877.6: "a rough approximation of plaintiffs' total recovery and the settlor's propor-

tionate liability, the amount paid in settlement, the allocation of settlement proceeds among plaintiffs, and a recognition that a settlor should pay less in settlement than he would if he were found liable after a trial. Other relevant considerations include the financial conditions and insurance policy limits of settling defendants, as well as the existence of collusion, fraud, or tortious conduct aimed to injure the interests of nonsettling defendants." (*Tech-Bilt, supra*, 38 Cal.3d at p. 499.)

■ Thus, *Tech-Bilt* held that in determining whether a settlement was made in good faith for purposes of section 877.6, a key factor a trial court should consider is whether the amount paid in settlement bears a reasonable relationship to the settlor's proportionate share of liability. (*Tech-Bilt, supra*, 38 Cal.3d at pp. 499–500.) This is because one of the main goals of section 877.6 is "allocating costs equitably among multiple tortfeasors." (*Tech-Bilt, supra*, 38 Cal.3d at p. 502.)

■ Accordingly, a court not only looks at the alleged tortfeasor's potential liability to the plaintiff, but it must also consider the culpability of the tortfeasor vis-à-vis other parties alleged to be responsible for the same injury. Potential liability for indemnity to a nonsettling defendant is an important consideration for the trial court in determining whether to approve a settlement by an alleged tortfeasor. (*West v. Superior Court* (1994) 27 Cal.App.4th 1625, 1636–1637 [34 Cal.Rptr.2d 409] (*West*).)

For example, in *West* the purchasers of a home brought an action against the sellers and their real estate brokers, alleging that they failed to disclose subsidence problems. The sellers cross-complained against the brokers for comparative indemnity and implied contractual indemnity. (*West, supra*, 27 Cal.App.4th at p. 1629.) The brokers later obtained a summary judgment against the buyers based upon the fact that buyers' claims against them were barred by the statute of limitations. (*Ibid.*) The brokers settled with the buyers for a dismissal in exchange for a waiver of costs. The brokers then brought a motion under section 877.6 seeking a determination that the settlement was made in good faith, thereby barring the cross-complaint of the sellers. The trial court granted the motion and dismissed the cross-complaint. (*West, supra*, 27 Cal.App.4th at p. 1629.)

This court reversed, finding the settlement was not in good faith. We concluded that it was improper to consider only the fact that the settling party was not liable to the buyers based upon the statute of limitations defense. Rather, we held the court should have also considered the *culpability* of the

brokers and their potential liability for indemnity to the sellers, and stated that shielding the brokers with immunity from the cross-complaints of the sellers "neither serves the goal of encouraging settlement among all interested parties nor promotes the goal of equitable allocation among multiple tortfeasors." (*West, supra,* 27 Cal.App.4th at p. 1636.) As we also stated in *West,* "The true value in the 'settlement' to [the brokers] was not the dismissal of the [buyers'] claims as to them, claims as to which they had already prevailed on the summary judgment motion, but rather the dismissal of the indemnity claims of [the sellers] . . . ." (*Ibid.*)

Likewise in this case it was an abuse of discretion for the court to only consider what Geocon would *pay* to Sunbow by virtue of the limitation of liability clause, without also considering its proportionate share of *culpability,* and its potential for liability to TSI, Swanson, and the other defendants for indemnity. Without doing so, a court does not further the policy of "allocating costs equitably among multiple tortfeasors." (*Tech-Bilt, supra,* 38 Cal.3d at p. 502.) Further, by determining such a settlement to be in good faith, without considering Geocon's proportionate share of liability to all parties, it is allowed to pay a relatively small amount, and at the same time obtain protection from claims for implied indemnity that may total several millions of dollars.[3]

Here, the evidence was in dispute as to whether Geocon was negligent and its proportionate share of liability. Sunbow claimed, and TSI and Swanson presented evidence that Geocon was responsible for approximately $3.4 million in damages. By contrast, Geocon paid Sunbow $50,000 in settlement, or 0.8 percent of the damages Sunbow claimed it was responsible for. A failure to consider the merits of Sunbow's claim against Geocon was, as a matter of law, an abuse of discretion where the amount paid has no rational relationship to Geocon's alleged proportionate share of liability.

---

[3] Geocon asserts that it and TSI are not joint tortfeasors, and hence TSI has no basis for an indemnity claim against it, because (1) it owed no duty to TSI, and (2) Sunbow could claim only a breach of contractual, not tort, duties against it. This contention is unavailing. (*Leko v. Cornerstone Bldg. Inspection Service* (2001) 86 Cal.App.4th 1109, 1115 [103 Cal.Rptr.2d 858] [" 'There seems to be no logical reason why the application of [this doctrine] should turn on the relationship of the tortfeasors to each other. What is important is the relationship of the tortfeasors to the plaintiff and the interrelated nature of the harm done' "]; 6 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, §§ 995–997, pp. 260–262 [professionals such as architects and engineers owe independent tort duty of care].) Sunbow has alleged in this action that Geocon and TSI owed a tort duty of care to it and that their combined negligence contributed to its damages. That is sufficient to make them joint tortfeasors.

There is no evidence that the settlement between Geocon and Sunbow itself was designed to hurt the interests of the nonsettling defendants. However, seeking a determination of good faith settlement certainly was. Geocon did not need such a determination as it was already protected by the agreement of Sunbow to indemnify it for any losses it incurred over and above $50,000. However, dismissal of cross-complaints for indemnity would greatly benefit Sunbow who, under that clause, would ultimately be responsible for any judgment for implied indemnity or contribution exceeding $50,000. With such claims eliminated, it was free to pursue the entire amount of its claimed damages against the nonsettling defendants, to the extent they were jointly liable with Geocon for Sunbow's damages, without any reduction for amounts found to be the fault of Geocon.[4]

Nor is the situation presented by this settlement akin to cases where a defendant is insolvent and/or lacks insurance, and courts will find a settlement with a payment of little or no money to be in good faith. (See *Aero-Crete, Inc. v. Superior Court* (1993) 21 Cal.App.4th 203, 208–209 [25 Cal.Rptr.2d 804]; *Schmid v. Superior Court* (1988) 205 Cal.App.3d 1244, 1249 [253 Cal.Rptr. 137].) In such cases, the defendant will be unable to pay much, if anything, to both the plaintiff *and* the defendants that have cross-claims for indemnity, and there is no logical reason to deny a good faith settlement motion, even if the defendant is paying far less than its proportionate share of liability. (*Ibid.*) Here, however, the only one limited in their ability to collect against Geocon by virtue of the limitation of liability clause is Sunbow. TSI and Swanson's claims for indemnity are unaffected by that clause and therefore their rights must still be considered.

We are mindful that one goal of section 877.6 is to encourage pretrial settlements. (*Tech-Bilt, supra*, 38 Cal.3d at p. 498.) However, the equitable policy behind section 877.6 is to encourage "settlement among *all* interested parties." (*West, supra*, 27 Cal.App.4th at p. 1636, italics added.) That goal is not furthered when Geocon's proportionate share of liability with the other defendants is not considered. The court's failure to consider this factor constituted an abuse of discretion. (*Tech-Bilt, supra*, 38 Cal.3d at p. 502.)

---

[4] While this petition was pending and a few days before oral argument, the parties entered into a stipulation that any finding of liability against Geocon at trial would be attributed to Sunbow and that any finding of fault against Geocon would operate as an offset against any damages awarded to Sunbow. In light of the stipulation, the parties requested that TSI and Swanson be allowed to withdraw their petitions. However, we have elected to exercise our discretionary power to resolve a matter of continuing public interest. (See *DuBarry Internat., Inc. v. Southwest Forest Industries, Inc.* (1991) 231 Cal.App.3d 552, 556, fn. 2 [282 Cal.Rptr. 181].)

## DISPOSITION

Let a peremptory writ of mandate issue directing the superior court to vacate its September 1, 2006 order finding the settlement agreement between Sunbow and Geocon to be in good faith. Petitioners shall recover their costs on appeal. The stay issued by this court on November 8, 2006, is vacated.

Aaron, J., and Irion, J., concurred.