Filed 7/8/16  Nixon-Egli Equipment v. Superior Court CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| NIXON-EGLI EQUIPMENT CO. et al., | |
| Petitioners, | E064305 |
| v. | (Super.Ct.No. CIVRS1305081) |
| THE SUPERIOR COURT OF SAN BERNARDINO COUNTY, | OPINION |
| Respondent; | |
| COAST CONSTRUCTION, INC. et al., | |
| Real Parties in Interest. | |

ORIGINAL PROCEEDINGS; petition for writ of mandate.  Keith D. Davis, Judge.  Petition is denied.

Chapman Glucksman Dean Roeb & Barger, Glenn T. Barger and Aneta B. Dubow; Stella Dugan Gunn, Morris & Stella, Joseph N. Stella and Jeffrey W. Gunn, for Petitioners.

No appearance for Respondent.

1

Yukevich/Cavanaugh, James J. Yukevich, Patrick J. Cimmarusti, and Sara M. Greco for Real Party in Interest Coast Construction, Inc.

The Boccardo Law Firm and John C. Stein for Real Parties in Interest, Rui Costa and Kimberly Costa.

The trial court granted the motion by real party in interest Coast Construction, Inc. (Coast) for a determination that its settlement with plaintiff Rui Costa[1] was in good faith within the meaning of Code of Civil Procedure section 877.6.[2] Codefendants Nixon-Egli Equipment Co., Wirtgen GmbH, and Wirtgen America, Inc., seek review of the ruling by petition for writ of mandate. (§ 877.6., subd. (e).) Having reviewed the petition and the return filed by real parties in interest, we uphold the determination of the trial court and deny the petition.

I

STATEMENT OF FACTS

The underlying lawsuit is a personal injury action brought by Rui Costa against petitioners. Costa was at work on a highway construction site when the heavy equipment vehicle he was assisting ran over him, severing both legs, one at the hip and the other just below the hip. Petitioners are the owners/manufacturers/sellers of the vehicle, described as a "pavement grinder" or "road-milling machine."

---

[1] Costa's wife is also a plaintiff, suing for loss of consortium. For convenience, we will generally refer to Costa as plaintiff in the singular.

[2] All subsequent statutory references are to the Code of Civil Procedure.

2

In its motion, Coast presented three grounds on which the motion should be granted. First, that as the contractor that hired Costa's employer to perform work on the project, it was immune from liability under *Privette v. Superior Court* (1993) 5 Cal.4th 689 (*Privette*) and therefore even a modest payment must be deemed to have been in good faith. Second, that because the statute of limitations had run and plaintiff had not sued Coast, as a matter of law Coast could not be liable for any damages. Third, that as a matter of fact Coast bore no responsibility for the accident so that a nominal settlement was fair.

Coast did adequately establish that it exercised and retained no control over the operation of the grinder, which was operated by Costa's employer, ABSL Construction (ABSL).[3] In Coast's view, the accident was either due to Costa's negligence, or that of the grinder operator because they failed to maintain eye contact while the grinder was in motion.

Coast settled with Costa (and his family) for $200,000. The motion contained no information about Coast's financial situation or potential insurance coverage.

Needless to say, petitioners' view of the accident was somewhat different. They asserted (and Coast does not dispute) that Coast, as general contractor, was handling traffic control at the project site—that is, the flow and control of vehicles using the public

---

[3] Costa cannot sue his employer due to the exclusive nature of the workers' compensation remedy. (Lab. Code, § 3602, subd. (a).)

highways under repair, as well as traffic on cross streets. In petitioners' scenario, Coast failed to take appropriate precautions as the grinder was moved across an intersection.

Petitioners' argument is that either the driver or Costa or both were distracted by a perceived *need* to check for traffic due to Coast's failure to provide reliable, adequate traffic control. Their support for this theory came from deposition testimony by the driver, Richard Crain, who testified that the accident occurred when he was driving the grinder across Highway 395 in order to reach a location on a cross street, Carlos, where the grinder would be loaded up for transport. Coast had one man positioned to stop north or southbound traffic on Highway 395. Crain testified "The whole thing right there is they had one traffic control guy right there. So I had to rely on Rui [plaintiff] and my own eyesight to watch the traffic on Carlos." When asked why he had taken his eyes off of plaintiff just before the accident, Crain replied "Because I'm watching traffic and I'm lining it up for the low bed." Plaintiff himself also testified that he was "looking out for the traffic, pedestrians, the safety" just before he was struck by the grinder.[4]

Petitioners also demonstrated that Coast had available insurance of at least seven million dollars. Plaintiff's medical expenses exceeded $2.3 million and he claimed to be permanently unable to work as well as to be suffering from phantom limb pain and depression.

Finally, it appears also that plaintiff's theory of liability against petitioners is that the grinder was defectively designed either because it did not have suitable rear-view

---

[4] We will comment on contrary evidence later in this opinion.

4

mirrors and/or a closed-circuit television system so that the driver could have more easily kept an eye on plaintiff.

II

DISCUSSION

Section 877.6 provides a mechanism through which a defendant who makes a good faith settlement with the plaintiff can obtain immunity from most obligations to indemnify joint tortfeasors under the doctrine of equitable immunity. (*Fullerton Redevelopment Agency v. Southern California Gas Co.* (2010) 183 Cal.App.4th 428, 432.) It is well-established both that the settling tortfeasor must pay an amount within the " 'ballpark' " of its proportional liability to the plaintiff, and that a settling defendant may reasonably offer less than might be awarded to plaintiff at trial. (See *Tech-Bilt*, *Inc. v. Woodward-Clyde &Associates* (1985) 38 Cal.3d 488, 499 (*Tech-Bilt*); *Dole Food Co.*, *Inc. v. Superior Court* (2015) 242 Cal.App.4th 894, 904 (*Dole Food*).) The settlor's financial ability to respond to a judgment and the possibility of collusion with the plaintiff are also factors to be considered. (*Tech-Bilt*, at p. 499.) We review the trial court's ruling under the deferential "abuse of discretion" standard and any factual findings of the trial court, express or implied, will be upheld if supported by substantial evidence. (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 957 (*Cahill*); *Dole Food*, at p. 909.) While the party bringing the motion need not provide any factual information, if the "good faith" is challenged by other tortfeasors the moving party must demonstrate that the settlement is reasonable. (§ 877.6, subd. (d); *Mattco*

5

*Forge, Inc. v. Arthur Young & Co.* (1995) 38 Cal.App.4th 1337, 1350 at fn. 6 (*Mattco Forge*).)

As noted above, petitioners estimated plaintiff's damages as at least the $7 million in insurance available to Coast, and pointed out that the settlement represented only about 2.85 percent of that amount.

A.

<u>*Privette* Does not Immunize Coast from Liability to Petitioners</u>

In *Privette* and cases amplifying on its rule, the Supreme Court held that the hirer of an independent contractor cannot be liable to an employee of the contractor for injuries suffered in the course and scope of his or her employment and due to the negligence of the employer. (*Privette*, *supra*, 5 Cal.4th at p. 702; see *SeaBright Ins. Co. v. US Airways, Inc.* (2011) 52 Cal.4th 590, 598-600.) The rationale is that the hirer should not be liable to the employee because the employer's obligations are limited to the payment of workers' compensation benefits. Because the hirer (not at fault) cannot seek indemnity from the employer (at fault), it is unfair to impose upon the hirer liability for tort damages. (*Privette*, at p. 701.)

However, this does not prevent the hirer (here, Coast) from being liable if its own negligence contributes to the employee's injury. (*Hooker v. Department of Transportation* (2002) 27 Cal.4th 198, 214.) In this case, Coast was responsible for traffic control at the work site, and petitioners argue that Coast's performance of this

6

obligation was done negligently and contributed to the accident. If petitioners are correct, *Privette* and its progeny do not apply.

### B.

Coast next argued that because plaintiff never named it as a defendant, and the statute of limitations had long since expired, it could not be liable to plaintiff or petitioners. In considering whether a settlement is in good faith, the court must consider not only the settling defendant's liability to the plaintiff, but *also* any potential indemnity liability to other tortfeasors. (*PacifiCare of California v. Bright Medical Associates*, *Inc.* (2011) 198 Cal.App.4th 1451, 1465-1466 (*PacifiCare*); *TSI Seismic Tenant Space*, *Inc. v. Superior Court* (2007) 149 Cal.App.4th 159, 165-166.) Coast's reliance on *Widson v. International Harvester Co.* (1984) 153 Cal.App.3d 45 (*Widson*) is misplaced. In that case, the plaintiff made a tardy attempt to add defendant Louetto to the case but the trial court rejected the effort. Louetto then settled with plaintiff for $30,000; a jury subsequently fixed plaintiff's total damages at $791,743. (*Widson*, at pp. 49-50.) *Widson* does not hold that because plaintiff could not recover from Louetto, *any* settlement by Louetto would be in good faith because it would be more than Louetto's potential liability to the plaintiff. Instead, the *Widson* court carefully considered the varying evaluations both of Louetto's proportionate liability and plaintiff's potential recovery at the time of the settlement. Because Louetto's liability was estimated to be between zero and 10 percent, or worst case 25 percent, and the estimated recovery by plaintiff was estimated to be from $200,000 to $750,000, Louetto's payment of $30,000 was not

7

unreasonable.  (See *Mattco Forge*, *supra*, 38 Cal.App.4th at pp. 1353-1354, citing *Widson*.)

Hence, plaintiff's inability to recover from Coast does not bar petitioners' indemnity claim as a matter of law.

C.

Finally, we reach the issue of whether Coast's settlement may be considered to be within the ballpark.  We conclude that it is and that the trial court correctly approved it as being in "good faith."

A good faith settlement under sections 877 and 877.6 must strike a balance between the competing public policies of encouraging settlements (and thus discouraging litigation) and the equitable sharing of financial responsibility.  (*PacifiCare*, *supra*, 198 Cal.App.4th at p. 1464.)  Factors to be evaluated include the overall likely recovery and the settlor's proportionate liability, the amount paid, the allocation of the settlement among plaintiffs, the possibility of collusion, and the settlor's financial ability to pay, including available insurance.  (*Tech-Bilt*, *supra*, 38 Cal.3d at p. 499.)  And as we noted above, a settling defendant must be expected to benefit by the decision to settle early and therefore need not pay its entire "fair share" of the potential judgment.

In this case, both Crain, the driver, and plaintiff have testified that they were looking for traffic on the cross street, Carlos, and were thus distracted from watching each other.  However, there is no evidence that it was *necessary* to watch for traffic because Coast's traffic control was inadequate.  Multiple witnesses described traffic on

8

Carlos as "light" or "almost nonexistent," and even plaintiff agreed that it was "light." In their initial statements concerning the accident, neither Crain nor plaintiff mentioned watching for traffic. Statements attributed to plaintiff in a CAL-OSHA report reflected only that he "did not realized [*sic*] that he was too close to the grinder track." Crain at the time simply reported that he was taking precautions not to hit a nearby building with the boom of the grinder when another worker ran up and told him he had struck plaintiff. Thus, neither appears to have contemporaneously proffered the explanation for the failure to maintain eye contact with each other on which plaintiff now relies.

There is no dispute that plaintiff's potential recovery is in the high seven figures and in this context a payment of $200,000 is nominal. Although Coast argues that its available insurance has "[n]o [b]earing" on the good faith issue, it concedes that it is a proper factor to consider under *Tech-Bilt*.[5] Nevertheless, if the trial court reasonably concludes that the settlor's potential liability is minimal or remote, even a small settlement may be found to have been offered in good faith. (*Cahill*, *supra* at pp. 962-964.) That is the case here.

We agree that the question of allocation is not significant here and that there is no evidence of collusion; although Costa has filed opposition to the petition (that is,

---

[5] Coast cites the trial court's comment that evidence of insurance was " 'simply not an issue here.' " But the trial court meant only that there was no dispute that Coast, through its insurance, had the financial ability to pay much more than $200,000. It did not mean that this point was irrelevant to the analysis.

9

justifying the settlement), this may well reflect only his desire to obtain *something* from Coast. The court did not abuse its discretion by granting the motion.

## III

## DISPOSITION

The petition for writ of mandate is denied. Real parties in interest to recover their costs.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
J.

We concur:


McKINSTER
          Acting P. J.


CODRINGTON
          J.